The third case up this morning, well the third matter up this morning is again involving consolidated cases. They are 416-0834, 0836, 0837, 0838, and 0839. Caption is Henry T.L. and others, people of the state of Illinois, versus Nicole Lomprez. For the appellant, Charles K. Smith. For the appellant, Allison Paige Brooks. Mr. Smith, you may proceed. May it please the court, I propose a count. My name is Clint Smith and I represent Nicole Lomprez. Nicole is the mother of the five children of this year. She's married to Jed. They have actually a total of six children. The youngest is not part of these proceedings. I don't want to duplicate everything Mr. Alvarez says, but obviously much of my argument is going to be somewhat similar to his. Because representing husband and wife in these proceedings. So to address the issue with regard to the stipulation, I think Mr. Alvarez covered that thoroughly. But I want to clear that certainly I did not, nor did my client ever, admit to being unfit. We did agree to stipulate to certain facts, but only certain facts. It didn't preclude the court from considering all of the facts, testimony, and evidence presented in the unfit portion of the proceedings. As far as it being an agreed order, that I believe was the phrase that Judge Atterbury chose. It was not anything that we actually agreed to calling it an agreed order. So it's my position that we stipulated only as to those specific facts set forth in the stipulation and not as to anything else. And the stipulation itself says stipulated facts would be allowed and accepted by the court in making its findings positive evidence. Mr. Alvarez also talked about the mental health assessment that was done on October 10, 2014. In that assessment, Nicole, my client, says has an inability to complete tasks which could be the result of low intelligence or poor hearing. These possibilities should be investigated before any final determination can be made as to placement. Well, with all due respect to my client, she's a very nice person, but there is an issue with regard to, I don't know why I call it lower intelligence, but comprehending and understanding tasks that she's charged with doing. She also is almost completely deaf. So yelling at her does occur because I found myself, she's sitting next to me in numerous court hearings, but I had to yell at her too, for her to hear what I had to say or else we wrote things back and forth down on a pad of paper. She has a device, but it's not a hearing aid. They can't afford hearing aids and the department said there were no funds available for something of that nature. But obviously it does have an effect on her ability to understand what a service plan is requiring her to do. And she depends a lot on what JED tells her to do or directs her to do. So there was no real investigation of any kind done by the department with regard to the lower intelligence, nor was there anything to assist her with regard to the fact that she is deaf. So I think when you look at what's reasonable under the circumstances as far as progress to correct the conditions or efforts to have the children return home, you must factor that into the equation, given her the intelligence issue and the deafness. Mr. Alvarez goes into quite detail in his statement of facts with regard to the various service plans, and there were numerous service plans. I, in my brief, referred to one. First of all, there was a finding that there were no alcohol or drug usage, illegal drug usage problems with regard to the Nicole origin. Nicole, hopefully, was gainfully employed at Hardee's and continued in that capacity for almost a year and then sought and obtained other employment. Domestic violence was not an issue in the family. I think the department took the fact that there was yelling going on in the family, that Mr. Lomprez was yelling at Nicole, as something called, what they called, domestic violence. But there was no evidence of any kind of physical domestic violence between the parties. Well, the domestic violence counseling was placed in the plan due to domestic violence assessment, right? Yes, there was a domestic violence assessment. So what did the assessment show? My client was low risk. No further action was necessary on her part to be taken, as what was shown in the service plan and the evaluation notes. There was, you know, a service plan has various action steps, which I'm talking about. Proof of income, she's required to provide proof of income, which she did, and that was acknowledged as being satisfactory. The department put a lot of concern over the condition of the home. They had five children in the two of them, so seven people living in a three-bedroom public housing apartment. I think given the age of the children, you can understand that there would be clutter and it would be difficult to keep the house clean all the time with that many people residing in the residence. But it's also noted that ultimately in the action steps in the evaluation notes that satisfactory progress had been made with regard to the condition of the home, and it was found, as noted in the evaluation notes, that the house now meets minimal standards. There's an action step with requiring adequate furniture and bedding, which was satisfactory. An action step with regard to any changes in household components was satisfactory. Random drug screening. As Mr. Alvarez stated in his op-ed, too, there was never any evidence of any sort of drug use, illegal drug use on the part of either Nicole or Jed. And what ultimately was shown in the action steps in the plan was that the department no longer had funding available to do random drops, drug testing, so there was no further action taken on the department's part in that regard because the entity that was providing that service no longer would do it for the department and they didn't have a replacement. There was an action step with regard to signing consents for release of information. It was ultimately noted satisfactory. Nicole did attend counseling sessions on her own. There was an issue with regard to attending medical appointments, and my client acknowledged, hopefully, that she did miss three appointments. Her position on that was that she had a job at Hardee's and she contends that the department would call the day of or the day before and say, this is the child's medical appointment. You need to be there at 10 o'clock, for instance. Her position was that she was working in a fast food place, that there was no way with that sort of lack of advance notice that she could take time off or get time off from her employer to make that appointment. She feels she was caught in a catch-22 in that she was required to have employment at the same time she was required to make medical appointments. Ultimately, as of February 2015, it was noted that she had been attending all of the medical appointments, so she corrected that situation. As Mr. Alvarez argued with regard to the visits, the videos showed what I would call normal family reaction. Sometimes it might have been chaotic, but the children only saw their parents on a very limited amount of time. In this case, it started in 2013 and continued on until the present time. So they had limited contact with their parents, and they were in a public place, and the parents were bringing toys, games, meals, and they were obviously happy to see their parents, so it naturally was going to be chaotic on the part of the kids with their parents. But several of the supervisors of visitation felt that the visits went well, ran smoothly, the children were affectionate, the parents were affectionate. Back to them, they showed proper discipline, they knew how to use time out. Kids did not want them to leave when it was time for the visit to be over. And the interaction was appropriate. So I submit that the court must, as the court knows, look at whether under the circumstances my client in her capacity exercised reasonable efforts to meet the conditions that were complained of, which I submit she did, and whether she also made reasonable efforts to correct the problems so that the children could return home. So for these reasons, I feel that my client should not be found unfit and was, in fact, doing the best she could under her circumstances and was making reasonable efforts to correct the problems. Mr. Smith, could you speak up a little bit? I'm having trouble hearing you. I'm sorry. Thank you, Justice. With regard to best interest, it's clear that we have two people who truly love and love their children and want them back. It seems like such an extreme result to say you're losing your five kids. I acknowledge that it's taken them some time to sort of get their act together to do what's required under the service plan, but they have done that, are doing to the best of their ability to rectify the situations complained of by the department. They also have limited time with the children, so the children obviously are going to bond with the foster parents, and since this has been going on from 2013 to the present time, they're with the foster parents all of that time. They see their parents sometimes one hour a week, if at that, so it's only natural the children are going to bond with the foster parents. Mr. Alvarez pointed out that the one where four of the kids are going is a sister to my client. Her husband isn't a gainful employee, supposedly does odd jobs, and she doesn't work either, so they're living off what the state will pay for them having these four children in their home. They also live a block away from my client and her husband. My client and her husband see the kids on a regular basis. They walk by on their way to school. They run into them at the grocery store. Both Mr. Alvarez and I feel that it's going to be difficult for them to have stability when their parents are right down the road and they're going to go to family gatherings with the sister and functions and school events. It just doesn't seem like that is in their best interest under that scenario. Lastly, again, we talked about the visits have gone well. We had the testimony of two friends of Nicole that said they were good parents, had a loving relationship with their children. They definitely loved their children. There was no drug or alcohol abuse. They completed the parenting class twice. They had now and have now adequate means of support. It appears that their combined income would be over $50,000. There's no evidence of domestic violence. The house, while maybe subjectively not what we would think is clean, has met minimal standards. With regard to the issue about restricting entry to the home, the caseworker was complaining because supposedly Nicole kept a caseworker out from getting into the home. Nicole testified that their vehicle was present, but the vehicle was present because it did not run. No one, to her knowledge, was home at that point in time. So as far as best interests, it's our position that the best interest would be for the court to return these children to their parents and give them the opportunity to raise their kids, love their kids, and do what's best for them and prove that they can be good parents. Okay, thank you. You'll have rebuttal. Ms. Brooks. Good morning, Your Honors. I'm Allison Paige Brooks, appearing on behalf of the people. May it please the Court. This case is related to the one that this Court just heard, the same panel, and I do not intend to repeat every single thing of my argument. But to summarize, this is the manifest weight of the evidence standard for both issues. It's a very difficult standard to meet. The intent of the stipulation was to have these facts accepted, and because the overall ratings for the service plans for the nine-month periods were unsuccessful, that does constitute sufficient evidence, as the trial court found, of the lack of reasonable progress towards return of the children. Reasonable progress being an objective test. The fact that the respondent mother has a mental health assessment showing low intelligence, the fact that she has a hearing impairment, those are unfortunate. But because the objective test takes into account whether there is sufficient progress toward demonstrable movement towards return of the children, such that they could be ordered return to them in the near future, it does not take into account the limitations of the parent. That's just simply unfortunate for the parent, because no matter who they are or what their limitations are, there has to be reasonable progress, according to the standard of what the statute says, and it has to be done in a certain amount of time. And the timeframes were determined by the trial court at the beginning of the hearing, and the stipulated evidence was sufficient to show that that standard was not met. In particular, some of the things that the respondent mother failed to do were completing the parenting classes during the nine-month periods, attending some of the medical appointments, and also was failing to cooperate with investigators, such as lying in their home. Now, one thing that the respondent mother's attorney says today is that, well, there's explanations for these things. Well, if that comes like it did here in the best interest hearing, where the respondent mother finally testifies and tries to explain some of these failings, that's not something this court should consider or can consider for purposes of deciding whether to reverse the finding of unfitness. Because the standard does manifest great of the evidence, evidence heard at the hearing with respect to the issue, the ruling, the decision that was made with respect to fitness, that's what's being challenged on the first issue, and that is the evidence that has to be considered. And evidence that was submitted only at the hearing on best interest is not to be considered and is not providing a basis for review. So that evidence wasn't offered at the first portion? Her testimony was not offered until the best interest hearing, is my understanding of the record. So with respect to that, she cannot controvert the facts that she stipulated to and said that she wanted those to be accepted by the trial court when ruling on her fitness and then have this court look at her best interest hearing testimony and try to controvert facts that she stipulated at the hearing on fitness. So that would be inappropriate to reverse on that ground on the basis of what she testified to at a later hearing. So with respect to best interests, this court has to look individually at each of the children, their special needs, their circumstances, and particularly the older children, their desires. And the younger children emphasize the attachments that they had because of the limited amount of time they had with the respondent mother and the much greater time during the long pendency of this case that they had with the foster parents. So naturally their attachments were very, very strong for the foster parents and less so for the natural mother, the respondent mother. So there is, like for example, they're not upset at the end of the visit. That's something that shows that it would not be detrimental to remove them and terminate the parental rights. As if they had been emotionally affected by the termination of the visit, for example, that would be an indication of what it would be like for them to have their rights terminated. Of course, and this is a unique situation for girls. They are with an aunt, so they would get to see and live close, so they do get to see the respondent mother on a relatively frequent basis. And that is something that the trial court can determine is not detrimental to their welfare. It's perhaps a benefit for respondent mother that she still has that limited amount of contact because technically as a terminated parent she has a stranger to her children, but now she at least has that because they are placed with her sister. There are no concerns about the foster homes. They're willing to adopt, the foster parents are, and they can provide complete support for their special needs. And so for those reasons, the best interest report and the recommendations regarding the ad litem in favor of termination of parental rights provide strong evidence in support of the trial court's best interest findings for all five children. And therefore, the respondent mother cannot persuade the court that it was against the manifest way of the evidence to terminate her rights as any of the children. So for those reasons, I would say request this court to affirm and entertain any questions. Otherwise, I thank you for your time. I see no questions. Thank you for your argument. Mr. Smith, any rebuttal? No. No. Thank you. The case is submitted.